# PERRI *v.* THOMA.

### PATENTS; INTERFERENCE; PRIORITY.

Testimony based upon an ambiguous entry in a notebook, discovered by the
senior party to an interference after the testimony of the junior party,
whose application disclosed priority of conception, and unsupported
by other documentary or satisfactory evidence, was *held* not sufficient
to establish priority of conception.

No. 810.   Patent Appeals.   Submitted November 20, 1912.   Decided December 30, 1912.

HEARING on an appeal from a decision of the Commissioner
of Patents in an interference case.              *Reversed.*

The facts are stated in the opinion.

*Mr. H. A. Dodge, Mr. A. D. Salinger,* and *Mr. H. F. Lyman*
for the appellant.

*Mr. George N. Goddard* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of
Patents in an interference proceeding, awarding priority of
invention to Andrew Thoma, the senior party. The Examiner
of Interferences awarded priority as to all the counts to Angelo

Perri, and the Examiners in Chief sustained this decision as to all save counts 2 and 4. These they awarded to Thoma.

The issue relates to a shoe-filling machine, and will be sufficiently understood from an examination of the several counts, which follow:

"1. A machine for filling shoes, having in combination, means for delivering filling material to the cavity in the bottom of a shoe, and means for packing said material into said cavity.

"2. A machine for filling shoes, having in combination, means for delivering filler to a shoe, and means for rolling said filler into place.

"3. A machine for filling shoes, having in combination, means to deliver filling material to a shoe, means to press said material against said shoe, and a support for said shoe.

"4. An apparatus for filling shoe bottoms, having a hopper for delivering filler material by gravity, controlling means for permitting the delivery of filler material to a shoe-bottom cavity, and a roll for pressing said material down into said cavity.

"5. An insole-filling machine comprising, in combination, automatic insole-filling mechanism to provide an insole with a layer of adhering filling material; and work presenting means to present an insole in operative relation to said mechanism.

"6. A machine of the character described comprising, in combination, insole-filling mechanism to provide an insole with a layer of adhering filling material; and controlling means therefor operable automatically upon presentation of the work for causing said mechanism to deliver the filling material.

"7. An insole-filling machine comprising, in combination, means to provide an insole with adhesive confined within the lip thereof; and a work support for the insole."

Thoma's application was filed April 28, 1906; that of Perri October 19th of the same year. The Examiner of Interferences, after a very careful examination of Perri's proofs, found that he was in possession of every expressed feature of the invention February 23, 1906. As Thoma, in his preliminary statement, had alleged that he conceived the invention "sometime in the latter part of February, 1906, and made a sketch

thereof at the same time, or a few days later, at least as early as the 1st of March, 1906," the Examiner held that he was limited to March 1st for conception. The Examiners in Chief ruled that Thoma was not restricted to March 1st, but was entitled to prove conception upon any date after the 14th of February, 1906. The examination of Perri's proofs, however, satisfied them that he had a conception of the invention set forth in counts 1, 3, 5, 6, and 7 as early as February 5, 1906; that as to counts 2 and 4 Thoma's proofs established conception February 15, 1906. Those two claims, therefore, were awarded Thoma. The Commissioner was of the opinion that under Perri's proofs he could not be given a date of conception and disclosure earlier than February 23, 1906. Upon that date he explained drawings embodying all the elements of the issues, and, as there is really no dispute that he was then in full possession of the invention, we shall accept that date as his date of conception. All the tribunals of the Patent Office have found that Perri was thereafter diligent. This ruling we shall accept, as it is fully warranted by the evidence.

We will now examine Thoma's case. As previously pointed out, he alleged conception and disclosure "in the latter part of February, 1906;" that he made a sketch of his invention "at the same time, or a few days later, at least as early as the 1st of March, 1906." Such was his contention while evidence for Perri was being introduced, and he expressed no intent to change his preliminary statement until the beginning of the taking of his testimony, when his counsel stated that *at final hearing* a motion would be made for leave to amend. Even when this notice of an intent to amend was given, the ground of the proposed motion was not stated. About two months later, while Thoma was testifying, he stated that towards the end of February or the beginning of March, 1910, while starting a fire in his furnace, he ran across an old notebook among old correspondence and paper waste. This book he took upstairs again and placed among other old memorandum books. On May 22, 1910, which was just after Perri had testified, Thoma says he looked over this book and discovered the following entry be-

tween entries dated January 3, 1906, and January 5, 1906:. "Mr. Maxwell. Make drawings for automatic slide on new filler machine." This memorandum, Thoma insists, immediate- ly refreshed his recollection, and became the basis for the subse- quent application to amend his preliminary statement. It is. not at all strange that, in the circumstances, the application to· amend should have been denied. As no appeal was taken from the denial, we proceed to determine whether Thoma's proofs, show that he was in possession of this invention prior to Febru- ary 23d.

Thoma's proofs consist of his own testimony, that of a Mr. Maxwell, a patent attorney who prepared his application, and. that of a Mr. Randall, the draftsman. Before his preliminary statement was prepared by Mr. Maxwell, Mr. Randall was con- sulted. It is somewhat strange that, aside from the entry in the memorandum book, to which reference has been and will. again be made, no documentary evidence whatever has been. introduced by Thoma. We shall not unduly lengthen this opin- ion by repeating the various explanations which have been made· to account for the lack of such evidence. Thoma was a prolific inventor, and, at the time he now says he made this invention, another invention of his had been placed in interference. He had taken out patents and, presumably, was fully conscious of the importance of preserving the evidence which he, his drafts- man, and attorney permitted to slip away. Moreover, Mr. Max- well represented him in his various applications and, as Mr. Maxwell was financially interested in the company to whom this invention was assigned by Thoma, there was every reason for preserving evidence which would have left no doubt as to the date when Thoma conceived it. The language of the pre- liminary statement is somewhat ambiguous, but we may assume· that the averment of disclosure "in the latter part of February" would admit of proof of disclosure in the latter half of Febru- ary, 1906. But averment is not proof. Eliminating the note- book entry, Thoma's evidence falls short of showing disclosure of this invention prior to some time in March or April. His. preliminary statement was signed on the 23d of April, 1906,.

and, according to his own testimony, this statement was pre-
pared after one or two interviews with Mr. Maxwell, and signed
by Thoma shortly after. Thoma testified that the entry in the
notebook was talismanic. "It needed," says Thoma, "that little
pointer to recall to my mind the particular work I did on
those drawings in regard to this filler machine. It was the
means of recalling to my mind in detail certain happenings at
this particular time of the year, and enabled me to remember
occasions which had utterly passed from my mind." By refer-
ence to this memorandum, Thoma was enabled to testify that
he was in possession of the invention in the latter part of De-
cember, 1905. It was conceded in argument, however, that
this entry might have applied to any one of several other in-
ventions relating to filler machines which were then engaging
Thoma's attention. There is still another reason, assuming
the integrity of the memorandum itself, why it should have
no probative force here. Thoma was asked in cross-examina-
tion *at what time* he made each of his five applications for shoe-
filling machinery; and was instructed to confine his answer to
such applications as had been patented, or as were involved in
the present interference, which instruction he followed. The
question was an entirely proper one, since, as already stated,
the memorandum might have related to any one of the five ap-
plications. The refusal of the witness to answer warrants the
presumption that another application may have been filed at
about the same time, and to which this memorandum referred.

Mr. Maxwell testified that, from the finding of the memo-
randum book by Thoma "as a starting point, he and I were
enabled to fix the dates and circumstances with certainty and
clearness." We have reviewed Mr. Maxwell's testimony with
care, and find nothing therein that establishes a date of con-
ception for Thoma prior to some time in March or April. It
required but a short time to prepare the application, and it is
inconceivable that it should have been prepared, or practically
prepared, at the early date now suggested by Mr. Maxwell.
The testimony of the draftsman is no better. He did introduce
a sort of card system upon which charges for work for different

clients were kept during the period between February 6 and September 20, 1906, but the trouble with this negative piece of evidence is that it was admittedly incomplete, so that it is impossible to say whether the charge containing the item for the drawing in question was not lost, if it ever existed.

To recapitulate: Perri's proofs are full, clear, and convincing that he was in possession of this invention as early as February 23, 1906. Prior to the introduction of Perri's evidence, Thoma did not even claim conception until some time in the latter part of February of the same year. After Perri's testimony, the notebook came to light, and the ambiguous entry therein became the basis of a new date of conception for Thoma. He has introduced, as previously pointed out, no other documentary evidence. Considering his testimony as a whole, its character and vagueness, we unhesitatingly conclude that he has not established a date of conception prior to March 1st. It is immaterial, therefore, just when he did conceive it, since Perri, as early as February 23d, had conceived and disclosed it. The decision is reversed, and priority as to all the counts is awarded Perri.                                    *Reversed.*